On behalf of the people, Ms. Sally Switz. Thank you, Mr. Durango. You may proceed. Good morning, Your Honors. Good morning, Ms. Switz. May it please the Court, my name is Santiago Durango. I'm an assistant appellate defender with the Office of the State Appellate Defender. I'm appointing counsel for the affluent, Mr. Juan Maiden. Your Honors, today I will be asking the Court to find that it has jurisdiction to consider this appeal because the notice of appeal in this case, the proof of service of the notice of appeal was in substantial compliance. With the requirements of the statute of the rule regarding proof of service. And I'm going to ask this Court to reverse the premature dismissal of the defendant's petition for relief from judgment because the petition was not served properly on the state and therefore the dismissal was premature on that basis. And the state did not waive the bad service in this case. As to the first question before the Court, the notice of appeal. In this case, the circumstances show that the notice of appeal was timely filed under the mailbox rule. The notice of appeal was due to be filed on December 16th, 2011, which is a Friday. The notarized proof of service shows that it was mailed by the defendant three days earlier on December 13th. However, the notice of appeal was not filed until Wednesday, December 21st. I mean, it was file stamped. File stamped, that's correct. At no such time. Yes. Yes, Your Honor. You would agree the affidavit does not contain the prepaid postage allegations? That's correct, Your Honor. Okay. Now, is this a rule that requires substantial compliance or strict compliance? My argument is that it should be liberally construed, particularly in the case of defendants who are in the Department of Corrections. As some of these courts' decisions note in the majority and in the dissent, the defendants really do not have full control of how their legal mail is handled at the institutions. Those are postmarked cases, and we're talking about, you know, I think Lugo and Hanson are postmarked cases. Yes. This isn't a postmarked case. No, it's a proof, but they ultimately concern whether the mailbox rule applies and whether the mailing was timely. And that, because these were Department of Corrections inmates in all these cases, whether it was timely filed under the mailbox rule or not, implicates the procedures that the Department of Corrections uses to handle inmate mail. And in this case, as the cases I've mentioned, that is implicated, and the regulations of the Department of Corrections spell out how the mail is handled. If it is the envelope that the notice of appeal was mailed in, is that part of the record? No, Your Honor, it was not included in the record. So we don't know if it had a legible postmark on it, and we also don't know whether there was an indication that there was postage, too. Is that correct? That's correct, Your Honor. So if the letter had been of record and it showed a postmark of Thursday or Friday, would that have been sufficient on that alone to establish timeliness? I believe so. Okay, and if the envelope didn't have anything to indicate that there was postage due, would that suffice to indicate that the box, if it weren't checked, was merely a typographical or some sort of de minimis error? Yes, Your Honor. We know if the circuit clerk's office in Lake County has a policy of paying for mail that arrives with an indication of postage due? I do not know that, but I do know that the Department of Corrections does not send mail out that is not stamped adequately. How do you know that? The regulations. You mean the Department of Corrections regulations? Yes. And I'm referring specifically to Title 20, Part 525, Section 525.130, Subsection A. And, Your Honors, I would be requesting that this court take judicial notice of this administrative code section. I have informed the opposing counsel of this section, and I have, if the court wishes to see the section, now the clerk has the section. Does the regulation indicate who affixes the postage? Yes, the regulation points out that the mail was collected and that the Department of Corrections basically does not send out legal mail. Does the Department of Corrections figure out what the postage that is necessary affixes that and then charges the prisoner's connoisseur account? Yes, exactly. And if the account does not have enough money, it is debited. And the rule states, subsection A, that the state will mail the letter, even if there's not enough money in the account, at the state's expense. And then the money is owed by the inmate. Which is why the affidavits that we get time and time again, in this case, Johnson, if you look at almost all the prison affidavits, don't say properly that the inmate isn't swearing to the fact that he or she put the postage on the envelope. Right. And that could be why. And so under this administrative code section, it does not appear that the mail goes out without proper postage prepaid, which was the only portion of the proof of service in this case that was missing. The proof of service was notarized. It showed who it was addressed to. It was signed. It was dated. The only portion that was missing was the proper postage prepaid language, which under this regulation really would be a redundancy because the Department of Correction, under its regulations, does not send mail out unless it's legal mail out, unless the postage is paid. Insofar as Credo and the state's position, did the state ever file an appearance? No, a formal appearance, yes. No, Your Honor. As to the second issue, my argument would be that in order for the state to waive the bad service, they need to do something. This case is very close in the continuum of possibilities. Well, didn't they do something? Didn't some assistant come forward and say, you can rule, judge, or you can do something? I mean, it was oral, and there was an appearance in the sense that this person's physicality was present in a courtroom, but he didn't file a written document called appearance. Yes. Or a motion to dismiss or an answer, I may add. The only instance that I could find in the case law where a prosecutor did less was the situation in Mitz where the prosecutor basically just gave his name on the record. In this case, it's just one small step removed from that situation where the prosecutor is telling the court, I just essentially don't want anything to do with this. I want you to rule on this without my input, and that's not a motion to dismiss. That's asking the court to take the action. That was after they were given 30 days to respond. After he was given the 30 days. To file a motion to dismiss. That's correct, Your Honor. Now, if the prosecutor had expressly waived the bad service, we would have a different situation, and that situation, I believe, that Vincent and Logon would apply. But since he did not expressly waive that service, he needed to do something on the merits in order to waive the bad service. But he did not do that in this case. He did not argue the points raised in the petition on the merits, which he could have done. He could have pointed out that the corpus delicta rule is still valid in Illinois. It was the petitioner's belief that it had been changed. He could have argued, the prosecutor could have argued, that the Hunt decision that the defendant relied on had been overruled by the Supreme Court. That's arguing the petition on the merits, and that would have been sufficient to waive the bad service under the case law and under the statute, I would say, although the statute of the court is a filing. But these things did not happen in this case. And the concern with accepting what happened in this case is that it would undercut the rule that some argument on the merits be presented to the court. It was just the presentation in this case was insufficient, and it would weaken that rule. And this is a law-established rule, and it's in the statute itself. It would undermine that rule that something on the merits be presented to the court. It would also, what happened in this case, also deprive the defendant of the opportunity to respond because it was essentially ex parte communications between the prosecutor and the judge. And the way it was handled, that inter-proceeding deprived the defendant of the opportunity to respond. If the State had filed an answer or a motion to dismiss, the defendant would have had an opportunity to file something in response to address the State's concern. Well, how is this an ex parte communication when the State stands up and basically says, we're not saying anything? If it would be considered, if it were to be considered as sufficient to constitute an argument on the merits, then it would be. Under 2301 you're talking about? Yes. Is it an implied waiver of service? Yes. Okay. Yes. And then one of the questions that this situation brings up is, what if under this situation instead of dismissing the petition, the judge would have granted the defendant relief? Would the State then be stopped from arguing that that decision was wrong on the merits because they had waived the opportunity to address the question on the merits? So there are concerns about approving of what happened in this case. Because if it's approved, then it implicates the defendant's right to respond. It implicates the force of the rule saying that the court must be addressed on the merits, the question must be addressed on the merits. And I didn't mention it just now, but also, it also implicates Rule 137. If the prosecutor were to make a bad faith argument to the court orally without signing any pleading or filing any pleading, that would enter a murky area implicating Rule 137. So there is a proper procedure for waiving a bad service, and that would be to argue on the merits. And the preferable method would be to do so in writing. So the short of it is that the State did not do enough in this case to waive the bad service because it simply did not do anything that addressed the petition on the merits. All it did was ask the judge to rule on his own and for the judge to find whether the petition had merit or no merit. Has the 3rd District come out with a case like Credo? No, they don't know we're on there. Because I think Credo cited the 4th District. Versus Llewellyn out of the 4th. It could be I don't recall right now, to be honest with you. I wrote Credo, didn't I? I believe you did, Your Honor. That was a new and old painting. If Your Honors have no questions, I would ask this court to find that it has jurisdiction. Thank you, Counsel. You will have time for rebuttal. Thank you, Judge. Ms. Schlesser, you may proceed. Good morning, Your Honors. Counsel. May it please the Court, my name is Sally Schlesser. I'm here for the people of the State of Illinois. I'd like to address both issues in particular because a few new things were brought up in the reply brief. So, addressing jurisdiction first in the Notice of Appeal. We have 12B-3 for a reason. And the reason is that we wanted to, excuse me, the Supreme Court wanted to remove uncertainty from this whole process. When we get into... How can a defendant follow 12B-3 if a defendant can't affix the postage to the grand law? Well, I think that that's where the Smith case that was cited by the defendant comes in. It's a 2011 case and it says that the act has been liberally construed for prisoners. It doesn't say that it should be liberally construed and that they don't have to follow this. But what it says is that, actually, the rule requires that you put it into the U.S. Postage, or Post Office, Postal Service, I should say. But the defendant can't do that if he's in prison. But what he can do is put it into the DOC mailing facility. And that's considered to be okay. So there is a liberal construction. So in this case, if he had said, you know, put it into the mail at DOC on a date within the 30 days, and with postage or a voucher, you know, or sufficient funds, or any sort of indication that there was some type of sufficient postage for this to go out within the time, that would have been liberally construed and I'm sure that would have met the requirements of the rule. So are you saying he would have to say that he has funds on account to pay the proper postage? Yes, or that there was proper postage was provided for by funds in his account or a voucher, or he did what he could to make sure that this was ready, you know, for processing by paying whatever the amount was. It wouldn't matter the words. What matters is that you have to say it. And the reason you have to say it is otherwise we're left with conjecture. Now, I know this court has a couple panels, one saying that it's only 12B3 and one saying the postmark is sufficient. But this isn't a postmark. This isn't an indication that in the time of the 30 days that it is already in the process or in the hands of a third party. Once it's in the hands of a third party postal service, obviously, then you can make a very good assumption. It's basically proved that, in fact, it must have gone out at the right time. We don't have that here. For all we know, he put this in without the proper postage, without any voucher system, which is what the regulations require. He put it into the mail, and that may be why it took five days. We don't know that it didn't sit there for two days before somebody told him it's still sitting here or here it is back or whatever because it doesn't have postage or funds in the account. It doesn't have some type of voucher. We are not going to be sending it out. And then he got together and got the postage. We start to get into this whole area of conjecture because he hasn't complied with 12b-3, and there is no postmark here. The administrative regulations say once he puts it in the institutional mail, it will be mailed. No, what it says is it will not be sent out unless there is postage either from funds within the account or a voucher, which will be for things that need to be filed in court and that type of thing, which say that funds will be inserted and they can be then taken. I'm starting to understand your argument. Is your argument that it has to go into the institutional mail within 30 days or it has to go from the institution into the U.S. Postal Mail? No, it has to go into the DOC facility. I think that's always been the case, and that's what we're saying. That is the liberal construction of the statute, and that's what Smith's talking about. It's that we've always understood that a prisoner is not a person out who can put it in with postage into the mailbox. So this is just another instance where he may not be able to actually attach the postal stamp, but what he can do is what he must do to carry the burden of showing that he's timely filed it. We cannot rely on what the defense counsel is arguing in the brief, which is five days. Oh, it probably takes five days, so he probably put it in at the right time. How do we know whether it takes two days, three days, four days, or five days for the mail to get there? We get into this whole level of conjecture, which is exactly what we can't get into in determining whether a person has done what they need to do and get it filed or filed by mail within the 30 days. It sounds like you're a strong proponent of saving the envelope and making it part of the record because if, in fact, funds were due an owing, it would be fairly clear on the outside or the face of the envelope. Well, if, in fact, funds were owing, that would show that. But, again, then it would have to go to the postmark, which this Court has determined is sufficient. And if the postmark shows … What they've determined is that it's sufficient if it's in time. Right, right. And that's exactly my point. The postmark would have to show something within 30 days. And then if it did so and there was no postage owing, then under this Court's prior ruling, certainly at least the split that has gone that way, that would be sufficient. So it may not be sufficient, you know, depending upon what panel of this Court. It may not be sufficient in another district of this Court, but certainly the Appellate Court. But it would be sufficient. It would possibly be sufficient. When you're talking about this case in comparison to those cases, I mean, those cases were postmark cases, but they also were cases where the panel had to see whether the postmark would suffice because there was no compliance with 12b-3. There was either nothing in the record, like Lugo, or, like Hansen, there was a certificate, a 1-105 or whatever certificate in the record that didn't comply with the affidavit requirement. Here we have an affidavit. We do have an affidavit. I mean, that complies in every respect other than the fact that the defendant didn't say he put the postage on the envelope, which he cannot do. That's right. But that's not a de minimis requirement, Your Honors. That's very important. The rule only has a few requirements. The requirement is that there be an affidavit so that this person is swearing to the fact that it was placed in the mail within the 30 days, that it's addressed correctly so that it actually had a chance of getting there, that it isn't just, you know, sent to anybody, not even the proper party or not at the proper place, and that it had postage. That's the way that this can get through. So if he said that he had a voucher, if he said that he put it in in a manner in which, you know, they can take the money out of his account, in any sort of sense of that, that would have been sufficient. But it's not something that can just be fluffed up as something that's not really necessary. Because if you get to that, then you get to the same point you would have without an affidavit or something. You get to this conjecture, well, presumably he put it in because we're dealing with five days, and five days isn't that, you know, that far off the rule. You can't have that. That's what 12b-3 is all about. I'd like to assume that we are to conclude that the failure to mark the box is consistent with a scenario whereby it is given to a Department of Correction mailing employee who then takes it and returns it to the defendant, who then resubmits it without a new affidavit, indicating a new and later date, and then it shows up in the circuit clerk's office. In other words, is it consistent with having filed it late? In other words, since it actually got to a circuit clerk's office, unless a Star Trek-type transporter was used, it was sent through the mail. And if it was sent through the mail and he's in prison, it probably came through DOC mailing. And if it came through DOC mailing, it either came with the affidavit that indicated that it was timely filed, I think on the 15th, or there should have been a new affidavit that indicated that there was a new later date that it was submitted because for some reason it was rejected because he didn't mark the box and do what you said he should do. Well, I mean, if you're holding the defendant to the fact that he would have done that, but we don't know that he would have done that. He said he put it into the DOC mail on the 13th, and perhaps he did. But that doesn't mean, since he didn't say that it had prepaid postage or that it was ready to go out with postage, that in fact that actually went out within the 30 days. I'm trying to take your argument and apply it to a scenario based upon working backwards in time from the fact that there was a notice of appeal received by the circuit clerk. It came through the mail. It came through DOC mailing employees.  So if, in fact, you're correct that there was some defect, there would, from what I can tell, because once DOC puts it in the mail, it doesn't have it anymore and can't retract it or get it back. So it means that there had to be some interplay between the time his original affidavit was executed and the time that it was, according to your scenario, actually sent out, which means that there should have been, assuming that it was done on the same day, then there should have been a second affidavit indicating the same day, or there should have been a second affidavit indicating a later day that was submitted to DOC mailing so that they could then, at some point later on in the future, send it on to the mail post office and the post office sent it to the circuit clerk. Well, I'm not 100 percent sure that I have done what your question is, but if your question is would the defendant have necessarily then, under what I'm saying, could have happened, that, in fact, since he does not say he had sufficient postage or the accounts and the funds available, that it could be that that didn't happen until later, that he would then have necessarily have added an affidavit. I'm not requiring a second affidavit. I'm requiring one affidavit, and that's what the rule requires, and that affidavit has to say that at the time you put it in, you made some type of arrangement, whether it's because you have funds available, whether you want to call that prepaid, because it is prepaid in a sense because you have funds, whether you want to consider it and say it has funds available, or whether you want to say there's a voucher. Are you aware, because I'm not really aware, but it would seem to me that DOC, when it accepts the documentation, probably looks at the affidavit to determine if the affidavit is the date upon which it's delivered to the mailing employees, because if they don't look at it, that date could be 30 or 60 days earlier. Do you see what I'm saying? Well, only to this extent. I don't know that DOC necessarily does. I don't know that any of us know that, but certainly DOC isn't really concerned. Once that affidavit establishes for the defendant, DOC is not really concerned with that, that it's within a 30-day period. DOC's delay is something, and that's exactly what the rule is for. Any delay, once it's put into that system, is not penalizing the defendant. But the reason it's not is because he's done everything he can do at the point before 30 days has elapsed to do what he needs to do so that it should go through in a timely fashion. Whether it's delayed normally or delayed abnormally in the sense like some type of negligence doesn't matter. He's not penalized. Could we get the Pareto, please? Yes. All right, as to Pareto, obviously the state can weigh the deficiency of service here, and it's our position that it did do that. Now, would it have been nice had the assistant state's attorney said, by the way, we are not challenging jurisdiction, by the way, here's something in writing? Yes. But at the time that 2301 was written, there also was not really, I am sure, envisioned something of this sua sponte dismissal that's now allowed. The 2301 was rewritten in 2000, and this started to become the norm and accepted after Vincent in 2007. What does that do? It allows the court to, once 30 days has passed, and 30 days has passed here in the sense that the state was aware that it was being given 30 days, and that's for the state. The state could weigh that requirement, too, for that matter. That's a provision to give the state the chance so that if it's an adverse ruling to the state later, the state can't come back and say, we didn't even get our 30 days. You came in and short-circuited the proceedings under law harm and took it away from us. So now we should not have an adverse ruling. But here we don't have that. This is the state coming forward and intentionally and I think clearly putting this question on the merits to the court, asking the court to make a judgment on the merits. That's no different than if it had come in with some type of answer, some type of pleading. It has not ever, ever been brought up that there is a jurisdictional problem. We never raised that. We never stood on that. We're not standing on that here. For the defendant then to turn around when the petitioner has brought something, which of course it wants to be, or at least when it files it, it wants it to be determined on the merits, to try to use that now and say, wait a minute, we don't like what's happening here, so therefore this rule is not being complied with. And the state really didn't ever subject itself to the jurisdiction of the court. What if the court, as counsel said, what if the court actually gave the defendant relief without hearing from the state? Well, I did think that through and I think that the state would be judicially stopped. It can't take a position that's inconsistent. It has asked the court to rule on this, on the merits, just as it would if it were bringing in some type of motion that went to the merits of the case, just as it would if it were answering that went to the merits of the case. It has now done something that under 2301 shows that it is not standing on the jurisdictional challenge, that in fact it's asking for an order. The state couldn't be asking for an order for the court to enter a void order. It's asking it to enter a valid order. A valid order means there is jurisdiction of the parties. Was the state actually asking for an order or was the state simply notifying the court of its, not its obligation, but its right to rule? I think, well, I certainly thought the assistant state's attorney was asking because the assistant state's attorney even provided the authority, suggesting that the court could do this. To me that is implicit in that is both that it is submitting to the jurisdiction, despite the deficiency in service, and also asking that ruling be made on the merits. If that ruling is, as it was, favorable to the state, that's a valid order. And it's a valid order because the state submitted to the jurisdiction. If it is adverse to the state, I believe a judicial estoppel, in other words, the state is not trying to game the system, I don't believe, by what it did here. It's not trying to play this both ways. There is no way to play this both ways. Once it brought Vincent to the authority, to the attention of the court, and said, you can do this, your honors, I believe that's the same as asking the court to make a ruling on the merits, which is what happened here. The state was completely oblivious to service, and I'll tell you, I was a state's attorney. Doing criminal stuff, you're not having back your mind the service, the civil service rules. The state wasn't trying to game the system, but we have what we have. Well, but I think the whole purpose of 2301 is, I mean, what we're dealing with is a petitioner who has not done what it needed to do to bring service. And so there's a notice, it's a fairness to the opposing party. And what's happened here is, of course, that's a right, if you will, for the opposing party to assert. They can assert, I didn't get service, no notice, not fair, therefore we're not going further with this. Or it can take a step in the other direction and submit itself to the jurisdiction of the court by making what has to be, I think, unequivocal, and that's, I think, the changes to 2301 and 2000 were meant to do that. They were meant to take away the pitfalls that were in that statute where you come in and all of a sudden you make a general, you're in for a general appearance when you were trying to argue both and didn't realize you couldn't argue both at the same time. So at this point, the state has done that by its very action of putting in front of the judge a case asking, a case which says that they can be dismissed on the merits, not just for a lack of service. Thank you, Ms. Swinson. Thank you very much. Mr. Durango, rebuttal argument. If you want to start off by responding to counsel's argument that the state here unequivocally was arguing the merits by saying what it said to the court. I disagree with that characterization of what occurred. The state did not argue the merits, did not address a single issue presented by the defendant in his petition. The state basically asked the court, you decide this, you can decide it, but you decide it without any material input from the state in the sense that, in a way that would have triggered the waiver of that service rule. There was just no argument on the merits of the petition. Regarding the notice of appeal, your honors, there's no need for conjecture in this case. The notice of appeal had to go out with proper postage. If the defendant has enough money in his account, his prison account, the amount gets docked from that account. If he does not have enough money in his account, then he needs to sign a voucher saying he will reimburse the state for that. And if he signs the voucher, the letter goes out at state expense. That's in the rule. If he had not signed the voucher, the letter would not have gone out. So it had to go out with proper postage. So there's no need for this court to engage in conjecture as to whether the letter had proper postage prepaid under the DOC's administrative rules. Regarding the notice of appeal, the Smith decision does not hold that the Rule 12b-3 needs to be strictly construed. In fact, the Smith decision pointed out that for prisoners, the rule is liberally construed. And in support of that principle, the Smith decision cited to a proof of service that was very similar to the proof of service here in the sense that it was found adequate without containing the words with proper postage prepaid. The Smith court cited to that proof of service as being adequate under the liberal construction of Rule 12b-3. Regarding the defendant using the waiver of service or the improper service rule improperly to take some sort of advantage of the rule when he should not be doing that. The rule protects a defendant when the service is bad and there's a premature dismissal. But the rule also protects the state. If there's no proper service on the state and a court proceeds to issue a ruling on the merits that the state is not aware that a petition has been filed, that ruling should not stand. So that ruling, the principle that the state should be given notice before the clock starts running on a dismissal or some further action in the case, serves to protect the state. It's not just a rule that protects the defendant. It also protects the state. Unless the court has further questions, I would respectfully ask the court to find that it has jurisdiction in this appeal. Because the proof of service in the notice of appeal was a substantial compliance with the rule. And I would ask the court to reverse the premature dismissal of the defendant's petition. Thank you. Yes, Your Honor. Thank you. Because the state did not properly waive the bad service in this case. I'd like to thank the attorneys for their arguments. The case will be taken under advisory. We are adjourned.